May it please the court, I'm Steve Milch. I represent the petitioners, Gallatin County and its detention officer and employee, Gregory Bishop. Mr. Milch, you have to move your microphone up just a little bit so we can hear you. There you are. Thank you. Is it Milch or Melcher? Milch, M-I-L-C-H. Thank you. The attorneys for the other petitioners, Mike Lilley and Roger Witt, who represent the petitioners, City of Bozeman and Spectrum Medical Defendants, respectively, have agreed that I can present the petitioners' argument in the case, but they are nevertheless available in the event that you have any questions of them. I'd like to reserve two minutes for rebuttal, if I could. And, Justice O'Connor, I know I speak for all the attorneys in this case when I say that it's an honor to have you sitting on this panel. On November 23, 2005, Katherine Leibrock-Joseph was arrested by City of Bozeman police officers and charged with assaulting her six-year-old son, Cale. She was taken to the Gallatin County Detention Center. Four days later, she was found unconscious on the floor of her holding cell by detention staff. She was transported to the local hospital, where she subsequently died. Now, all the claims in this case against all the defendants, all the petitioners herein, arise out of that singular case and controversy involving Katherine Leibrock-Joseph's death. It's alleged that the acts and omissions of each of the defendants caused or contributed to her death. Now, in the amended complaint, the plaintiffs alleged that Detention Officer Gregory Bishop, who was a supervising sergeant on the shift in which she was found unconscious in the holding cell, they alleged that Detention Officer Bishop was not only negligent, but that he was deliberately indifferent to Leibrock-Joseph's medical needs. Now, that constitutes the federal 1983 claim. Based on the existence of that federal claim, all the defendants consented to the removal of the action to federal court. Now, pursuant to 28 U.S.C. 1367 parense, district courts shall, not discretionary, shall have supplemental jurisdiction over state law claims that are so related to federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Now, state law claims are part of the same case as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. Also, supplemental jurisdiction extends over the fact that the federal court unquestionably had jurisdiction, supplemental jurisdiction, doesn't necessarily mean that the federal court can't decline to exercise the jurisdiction. Under the four scenarios in 1367C, right. So when you removed the case, you took the risk that Judge Haddon would simply say, I'm not going to hear the supplemental claims, and that would have been the end of it, right? There's got to be a basis for him to decline that jurisdiction, and it's got to fall within one of those four scenarios of 1367C. For instance, and I'll get into the particular one that applies here. I understand your argument. I just want to make sure we're proceeding on common ground. There was a risk when you removed it that the case would be bifurcated. I'm sorry, Your Honor? There was a risk when you removed it that the case would be bifurcated and part of it would be sent back to State court. I realize your argument is it shouldn't have been. As soon as summary judgment was granted on the federal claim, then the court was permitted by statute to decline to exercise supplemental jurisdiction over those state law claims. That was 1367C3, which provides that district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction, and that's exactly what the judge did in this case. Now, the plaintiffs appealed the dismissal of that 1983 claim against Detention Officer Bishop. They did not appeal the discretionary dismissals of any other state law claims, including the negligence claim against Officer Bishop. On June 22, 2010, a three-judge panel of this circuit rendered a memorandum disposition which reversed the grant of summary judgment on the 1983 claim and reinstated it. Because they did that, they reversed the discretionary dismissals of the state law negligence claims, even though the dismissal of those claims was never appealed. Well, in this case, did the district court have discretion here to decline to exercise jurisdiction over some of these defendants? Once it got rid of the federal 1983 claim, it was totally permitted to decline jurisdiction over the state law claims, and that's what he did. But even when the federal claim went ahead, as would happen following the reversal, did he not still have discretion to dismiss or to decline to exercise jurisdiction under the other subsections of Section C or of Subsection C? You pointed to Subsection 3C or C3, when he dismisses all the claims over which he has original jurisdiction. That's the federal claim. But he then can dismiss the other remaining state claims. But there are two other grounds at least on which he can still dismiss these state claims, Section 2 and Section 4. And I believe he relied on both of those. Well, Your Honor, when he actually dismissed those supplemental jurisdictional claims on this Court, when we returned it and said that the federal claim was reinstated and this, of course, automatically reinstates the state claims that were dismissed because there was no longer a federal claim, that left him back with Sections C2 and C4, didn't it? Your Honor, he had declined it on the basis that he got rid of the federal claim. Yes. That's the basis for it. That's right. On the remand, I don't know if he necessarily said he was going to rely upon any of the state claims. I don't think that they were state law claims were coming back at all. No, he made an alternative finding that he was going to decline supplemental jurisdiction in the exercise of his discretion. I think that's what perhaps Judge Reinhart's talking about. He did, in fact, say that he was not going to exercise jurisdiction because he didn't think that's what the Ninth Circuit order obligated him to do. And that's the thrust of your brief. But he did make an alternative finding. And I guess that's the one that sort of puzzles me as well. What do we do with the alternative finding? Even assuming that you're correct, what do we do with that? The four scenarios whereby he could dismiss, you know, or decline jurisdiction over the state law claims, the first one is if the claim raises a novel or if the state law claim raises a novel or complex issue of state law. Well, I think the ones he mentioned were two and four. That's one. Okay. And three we've already taken care of. Three is the one you started with. But he also, I believe, mentioned two and four. Well, and two, you know, that's where the state law claim substantially predominates over the claims over which the Court has original jurisdiction. You know, whether a state law claim substantially predominates does not depend upon a simple numerical count of the state and Federal claims. The mere fact that a plaintiff's state claims outnumber his Federal claims is insufficient to satisfy the substantially predominate standard. And that was all briefed in the reply brief in support of the mandamus action. Under that substantially predominate prong, the analysis is critical is that it involves a consideration of whether the claims all arise from the same facts. And if the claims all, as they do in this case, and where all the claims, both the negligence and the Federal 1983 claim, arise from the same facts, it's improper to rely upon a substantially predominate provision. Well, perhaps. There's a big difference, though, in the first part of your argument than the second. The first part of the argument is whether or not he should have reinstated them because he thought they were, you know, the question of the effect of our mandate. But on the question you're now arguing, we are quite deferential to the judgments of the district courts on that question. So although we might disagree and we might agree with you that the claims don't predominate, what basis do we have to second-guess the district court? And is that a violation of our mandate? You know, I'm hearing aids, and it's kind of echoing here, so I'm having a difficult time hearing you. There's a nice circuit decision, the executive software versus the United States District Court, in which it held, and it's still good law, that in exercising its discretion to decline supplemental jurisdiction, a district court must undertake a case-specific analysis to determine whether declining supplemental jurisdiction comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness, and comedy. Now, in this particular case, there was an earlier filed case that the plaintiffs had brought. We'd been in federal court for over two years on that case. We saw the discovery that was done related to both the state law claims and the federal claims. The only thing left in this case right now is a trial. There's no more discoveries completed. I mean, as far as judicial economy, you might as well try it all at the same time rather than risk the, you know, violation of the rule against splitting causes of having to defend an action in state court and an action in federal court over the very same facts. Right. No, I understand your argument. I'm just saying that usually we leave those judgments to the district court on judicial economy and how a case ought to be tried, and we would say it would take a fairly high abuse of discretion for us to reverse on a pure act of discretion. And it appears to me that was true. The district court did, I think, perhaps misinterpreted our mandate in some respects, but then at the end he said I make the alternative finding that I'm going to decline to exercise jurisdiction in the exercise of discretion. So I understand your policy arguments, why you think it was wrong, but why do you think it rises to the level of abuse of discretion? Your Honor, the mandate, and that's what the issue is, whether the district court complied with the Ninth Circuit's mandate in this case. The Ninth Circuit, when they reversed and reinstated that 1983 claim, they didn't remand it back to the district court to allow the district court to reconsider whether it was going to decline jurisdiction over the state law claims. The Ninth Circuit mandate reversed flat the dismissal of those state law claims and reinstated them in the federal court. That's true, but that happens almost as a matter of routine when there's a federal claim involved or supplemental state claims. Nobody argued the supplemental state claims, as you pointed out in the prior case. So usually, as a matter of course, you would reverse everything and reinstate the state claims, and to the extent that the district court thought they hadn't been reinstated, I think the district court may have been wrong. But I don't think we tied the district court's hands for the exercise of normal discretion. There's nothing in the opinion that says that. Well, Your Honor, I — my feeling is that the court didn't think that he had any discretion, really, with regard to reinstating the state law claims. He believed it was just reinstating the federal claim and the negligence claim against Detention Officer Bishop. You're down to about a minute 15. Do you want to reserve? I'm sorry? You're down to about a minute 15 in time. Do you want to reserve? You have about a minute left. Do you want to reserve time for rebuttal? Oh, yeah. Two minutes, please. Thank you. Justice — Judge Reinhart, Judge Thomas, Justice O'Connor, your presence is truly a delight. Thank you for the opportunity to be heard. My name is Tom. Along with my colleague, James Commers, we represent the real parties in interest. The Josephs family, Annie, Sophie, and Cale, who are in the audience today, and their mother, Catherine, the decedent. May their argument please the Court. This is really a very simple procedural issue. And the term of art that describes the merit of this petition, a petitioner's petition for writ of mandamus, is waiver. I say that because the proper vehicle to challenge a discretionary dismissal of a State law claim in Federal court is by appeal, not by writ. And that has been established. Well, the issue here is — I think it's what you're saying, in essence. But the issue in this case is whether the district court violated the orders of this court, in which case you can have a mandate. And I think what — even if the district court may have been wrong on some other question, did it violate the mandate of this court when it then decided, for other reasons, to decline to exercise jurisdiction? I mean, it gave two reasons. One, it didn't have to reinstate this. And two, alternatively, if it reinstated it, it would then decline to exercise jurisdiction. Is the second decision a violation of the order of the court? Certainly not, because that was not within the compass of this court. The only issue that the court entertained was the dismissal of the singular title 42 U.S.C. Section 1983 claim against Gregory Bishop individually, not in his official capacity. So we didn't have — we weren't — we didn't bring in Respondiat Superior or Valkyries. If the district court had said, I know that the circuit court said you should reinstate this claim, of these State claims, and the judge said, I'm not going to do it, the circuit's wrong, then mandamus would be appropriate, right? If that was the — this Court's intention, that was its mandate, then, yes, that would be wrong. But if the district judge said, I think that the Ninth Circuit did not really intend me to do it, and that's the end of this, that would be one case. The case here is he said, I think they're wrong, but assuming that they do this, assuming that that is the Ninth Circuit's intention, then I'm going to proceed and dismiss on these other two grounds, exceptional circumstances and the State claims predominate. Is that a violation of the Court's order, is the question? As to the latter point, no, Judge. And as to the former, it was also not a violation, it is our — Joseph's position, of this Court's mandate. And I think it really boils down to a matter of semantics. Well, you know, everything boils down to semantics in the law. But there are two different issues here. And the alternative ruling, or the ultimate ruling of the district court, that he was going to decline to exercise jurisdiction because of subsections 2 and 4, that's I gather your first argument. You now want to make an alternative argument that if he simply stopped at point 1, you would still prevail, although I don't know why it's particularly important to you to make that second point. At least you can make it as an alternative point. But the first question is really the issue before us. As Judge Thomas pointed out, he first said, I don't think that's what the Court meant. Had he stopped there, we'd have a different case. But he then went on and made an alternate finding, that even if he reinstates, as the Ninth Circuit said he should, then he would dismiss on these alternate grounds sections 2 and 4. And the question is, is that alternate ruling a refusal to follow the orders of this Court? Absolutely not, Judge Reinhart. That would be outside of the compass of what was in this Court's view on appeal. That is, it did not address that issue, sub c 2 or 4 of 1367. The district court dismissed, discretionarily dismissed the State law claims when he dismissed the 1983 claim, the Federal claim. And at that point, it is our position that someone, if they were aggrieved, had to take an appeal to those dismissed claims. Joseph's did. They appealed only the 1983 claim. Well, whenever they appealed, this Court issued an order on more than the 1983 claim. It issued an order with respect to the State claims as well. Judge Reinhart, yes, with respect to Bishop, because Bishop and the claim against him were the only issues within the compass of this Court on appeal. Now, I say semantics because this Court's reinstated State law claims. Let's assume that this Court meant what it appears to have meant, that you really shouldn't have, if you made an error with respect to the Federal claim, then you shouldn't have dismissed the State law claims. On that basis, and you did, therefore, all those claims are reinstated. Then what? Well, I would like to clarify that, Judge Reinhart. Normally, if this was a summary judgment which encompassed all of the — not only the Federal claim, but all of the State claims, versus what the judge, the district court judge did, which was discretionarily dismiss those State law claims, after granting the motion for summary judgment to dismiss the Federal claim only. So then that motion, that summary judgment, grant of summary judgment, went up to this Court, and only that Federal claim was at issue. Now, had that summary judgment disposed of all of the claims, then all of those claims and parties, effectively, would have been in front of this Court in which it would have a jurisdiction to reinstate all the claims against — all the State claims against all the State defendants. Let me ask a practical question. Yes. Why do you want this lawsuit split? You know — You've got a trial date in Federal court. Why do you want these claims sent back to State court with the possibility of inconsistent outcomes? Well, we have two separate issues which shouldn't conflict in either judgment. One is a constitutional deprivation of the 1983 claim. The other is simply a — in the State court, negligence against a number of the defendants. You did not make a Dorward claim? The State law equivalent of 1983. No, we did not. Okay? In fact, the State court is completely absent of any Federal claims, and the defendant in Federal court, Bishop, is no — is not in State court. So we've bifurcated this case so that we can try the constitutional issue, the 1983 claim, in Federal court and the negligence claims in State court, which is very complex. We have, you know, the negligence. We have failure to train, below the standard of nursing care, that kind of thing. Over here, we have a constitutional deprivation, which is much more intangible than the negligence claim. But you'd have to — the same nucleus effects would apply. You'd have to concede, or most of them. You have the unfortunate occurrences, the testimony about what happened at the jail, what happened before that. I assume the testimony is going to be almost identical, with the possible exception of a couple witnesses, right? Well, not entirely. What we have here is a failure to provide medical — necessary medical attention. And we are going to focus on Mr. Bishop insofar as his interaction with the decedent. So to answer — again, I want to follow up with a practical question you had, which is, it will — and there's precedent out there that this is a good thing. You don't — it will avoid jury confusion. It will also save time in the Federal case. If we held both claims together, or both cases together, we would be talking about  Well, correct me if I'm wrong. You never brought a motion to have — prior to this, to have the court decline to exercise supplemental jurisdiction, right? You didn't ask the Federal court to send the state claims back down. Actually, we did. We did a motion to remand. Was that the beginning of the case? Defendants opposed it. Now, they should have known the writing was on the wall when they moved to dismiss the 1983 claim against Bishop. That respondeat superior didn't apply, and their res judicata argument wasn't going to stick. Unfortunately, the plaintiffs were forced to come up to this court to get that turned around. Quite frankly, the defendants are in this position, the petitioners, Gallatin County, City of Bozeman, Spectrum Medical, and its nurses, by their own doing. And I, again, believe that this all boils down to their waiver. The proper vehicle, if they wanted to stay in Federal court, was to lodge a protective cross appeal so that they didn't lose their place in Federal court. What is good for the Josephs is good for the petitioners. If the Josephs had not appealed their state law claims, left them dismissed, didn't refile them in state court, well, they would have abandoned those claims. It's a well-known principle that if you don't appeal the claim, you abandon it. And that's what the petitioners did here. And I can offer a contrast that really sends this home, and that is this circuit has carved out an exception to the mandatory jurisdictional notice of cross appeal under Federal Rule of Appellate Procedure 4, wherein if you don't do it, you don't get it. Here, this court has said, well, if the issue is raised, then we'll entertain it. It was never raised in the briefing in the underlying appeal. They simply reclined on their right to cross appeal or lodge a protective cross appeal. Right. Well, I understand that. But at the end of the day, our panel sent it back and instructed the district court to reinstate the state law claims. And we're just really talking about the meaning of that order and the meaning of what the actions the district court took after that, aren't we? I mean, we're not going to be . . . I don't think we can decide that on the basis of waiver today. And, you know, the appropriate measure would have been that we could have resolved this long ago by petitioners requesting a rehearing when that order came out within 14 days. They didn't do that. They waived that, too. So here we are, several months later, and we're, I don't know how much further out before we're going to get a trial. And I don't believe they even have standing to petition this court over this except Defendant Bishop. So the procedural posture of the case is this. There's nothing happening in state court at the moment, correct? Everything's been stayed? That is correct. Okay. And a federal court at state pending the outcome of this, the writ, the decision on the writ, has a tentative trial date been set in either court? No, Your Honor. Okay. No judge. Any further questions? No. Okay. Thank you. Real briefly, Judge Thomas pointed out, district court has permitted the plaintiffs to do two parallel proceedings, one in state court and one in federal court, over the same case and controversy involving Katherine Leibrock Joseph's death. Both cases are comprised of the exact same facts. They implicate a duplication of proof, and they require the appearance and testimony of the very same witnesses. And it's a colossal waste of judicial energy and time and resources to have to try this thing twice. Secondly, the Vescano case that we relied upon as, you know, to form the basis for the mandamus action, this court stated as follows. On remand, a trial court can only consider any issue not expressly or impliedly disposed of on appeal. Now, the mandate in this case, once again, did not remand this case back to the district court to allow it to reconsider whether it's going to exercise supplemental jurisdiction over these state law claims. It flat reversed the dismissal of those state negligence claims and reinstated them in this federal action. And unless you have any more questions, that's all I have. I think not. Thank you, counsel. Now, I'd be remiss if I didn't invite you to say something if you wanted to. Would you like to say anything, 15 or 20 seconds on this? Thank you for this opportunity. Ditto. Thank you very much. The case just argued will be submitted for decision. We will be in recess while we have a preliminary conference. Time permitting, we may come back and answer some questions of the students. I want to assure all counsel we do not permit questions of your cases, so you may rest assured we won't be discussing that. But if time permits, we'll come back and have a session with the students here. But that will be in recess for the morning.
judges: O'connor, Reinhardt, Thomas